## GARFIELD HEATH v. THE STATE.

No. 52. Decided October 13, 1909.

**Assault to Murder—Aggravated Assault—Charge of Court.**

Where, upon trial for assault to murder, the evidence showed that the injured party brought on the difficulty by throwing a rock at the defendant and pulling his pistol, that then defendant attacked him, and cut him with an ordinary pocket knife, not inflicting serious injury, the court should have charged the law of aggravated assault on this phase of the case.

Appeal from the District Court of Cass. Tried below before the Hon. P. A. Turner.

Appeal from a conviction of assault to murder; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*O'Neal & Allday,* for appellant.—Slaughter v. State, 34 Texas Crim. Rep., 81; Vinson v. State, 55 Texas Crim. Rep., 490, 117 S. W. Rep., 846; Fuller v. State, 95 S. W. Rep., 1039; Lundy v. State, 48 Texas Crim. Rep., 217, 87 S. W. Rep., 352.

*F. J. McCord,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—This conviction was for assault to murder, two years being the assessed punishment.

There is quite a lot of testimony in the case going into minor details, but the substance is about as follows: Appellant and Floyd

Steger, the assaulted party, were cousins. On Thursday night prior to the difficulty Saturday evening, they were at the residence of a neighbor where Coy Steger, brother of Floyd Steger, was present. Appellant had a guitar or banjo which was handed Coy Steger by appellant at Coy Steger's request. Appellant requested its return. Coy Steger was indifferent or slow about returning it and this brought up an angry colloquy. Coy Steger invited appellant to fight. They went out on the gallery where appellant was struck on the head a time or two with a stick. After leaving this place enroute home there was another difficulty, in which appellant was struck just over the eye with a rock which caused a painful but not a serious wound. Floyd Steger inflicted this wound. The following Saturday evening Floyd Steger and one Will Taylor had been to a baseball ground two or three miles away, and in returning passed appellant's residence. Appellant was standing at his hog pen looking after his hogs when the parties approached. The testimony in regard to the immediate transaction is somewhat in conflict, Floyd Steger testifying for the State that appellant turned towards him and remarked that he wanted to compromise matters in regard to the previous difficulty, at the time having his right hand in his right pocket and a rock in his left hand; that appellant took his hand out of his right pocket and transferred the rock to his right hand which he threw at Floyd Steger, and then approached him with a knife and cut him about the face, in fact, inflicting several slight wounds about his face, and that while they were in this condition he, Floyd Steger, pulled his pistol, firing two shots at appellant, one taking effect in appellant's right hand, the other entering his side. These wounds placed appellant in bed for some time under the treatment of a doctor. Appellant's testimony, supported by the other eyewitness, Taylor, is to the effect that he was attending to his hogs at the pen when the parties approached, and that he proposed to compromise the previous matters with Steger, who, in effect, declined. He says that Steger was going home, and in going home both of them had to pass appellant's house where the difficulty occurred. Appellant was at the hog pen, and looked like he was letting down the fence. That Steger said to him before reaching appellant that he and appellant had had a little trouble, but he did not say at that particular juncture what he was going to do with appellant. Steger, the assaulted party, was riding a mule. After overtaking this witness, Steger got off the mule and they walked together, Steger leading his mule. The road passed in about twenty-five feet of the hog pen. When they reached the hog pen, or opposite it, they stopped and appellant spoke and said to Steger that he wanted to compromise for hitting him with a rock, that is, Floyd Steger hitting him, appellant, with a rock. Floyd turned his mule loose and threw his hand into his

bosom and said: "God-damn you; you had better get away from me, or by-God, I will kill you." At this time appellant was doing nothing but standing by the fence. This witness said he saw nothing in appellant's hand, but would have seen it if he had anything, as both hands were hanging by his side. Steger turned his mule loose, placed his hand in his bosom and pulled his pistol up, putting the handle of it in sight. Appellant did nothing, and told Steger he did not want any trouble or fuss with him; that he wanted to compromise. At this juncture Floyd Steger turned his pistol loose, picked up a rock and threw it at appellant, knocking off his hat. Appellant then threw something at Floyd Steger, either a rock or a chunk, but failed to hit him. Steger then ran up to appellant and grabbed and hugged him and went to beating him with his fist on the head. Appellant scuffled and sought to get loose. Steger at this point stopped striking appellant with his fist and tried to get his "gun." Appellant reached in his pocket and got his knife. With the knife he cut Steger two or three times, as before stated, and Steger shot appellant twice, as has been detailed. Appellant "fell loose" at the second shot and said, "Now, Floyd, you have done killed me; don't shoot me." Floyd Steger said, "Yes, and God-damn you, if I had some more balls I would kill you." The testimony of this witness is not widely variant and practically and substantially the same as that of appellant, who testified in his own behalf. The court gave the following charge: "In this connection I further charge you that if you believe from the evidence, beyond a reasonable doubt, that the defendant threw a rock at Floyd Steger and thereby commenced a difficulty with him, but if you believe that his purpose was simply to have a fight with said Steger and to inflict on him some injury less than to kill and less than a serious bodily injury that may probably result in his death, then his right of self-defense would not be wholly lost, but would be abridged to the extent that if you believe that defendant cut Floyd Steger during said difficulty to keep him, Steger, from shooting him, and that said knife was a deadly weapon, then you will find the defendant guilty of an aggravated assault, even if you believe from the evidence, beyond a reasonable doubt, that during the difficulty Floyd Steger was about to shoot defendant with a pistol and defendant cut him with a knife to keep said Steger from shooting him."

This is the charge, as we understand, was given on aggravated assault. It is insisted that this was error, and that the court further erred in not charging the law of aggravated assault from another phase of the case made by the facts, to wit: If Steger began the difficulty by throwing at appellant with a rock and appellant cut him with a knife before the shooting occurred or just previous to the firing of the shots, that still he would not be guilty

of a higher offense than aggravated assault if there was an absence
of a specific intent to kill. The testimony of the defense both by
appellant and Taylor raises this question squarely, for they testified
that Steger began the difficulty by throwing the rock which knocked
off appellant's hat, and that they ran together and a knife was used.
It is shown that the knife was an ordinary tin handle pocketknife,
with a blade from two to two and one-half inches in length and
very dull, and the injury was not serious by means of the wounds
inflicted. The State's contention is that the cutting occurred before
the pistol was fired by reason of the fact that the right hand of
appellant, with which he used the knife, was shot and put in such
condition that he could not use the knife after the wound was
inflicted by the bullet. Under these circumstances we believe appel-
lant was entitled to a charge on aggravated assault from this stand-
point of the case. It occurs to us that there were perhaps three
questions under the evidence to be submitted, assault to murder, and
aggravated assault from two standpoints. Two of these were sub-
mitted by the court and the third was not, which has just been
mentioned. If appellant brought on the difficulty and made the
attack with a knife upon Steger for the purpose of killing him,
as contended by the State, the verdict of the jury might be justified
from this standpoint, at least this authorized the charge given by
the court submitting the issue of assault with intent to murder.
The other issue was submitted by the court, as above stated, in his
charge, to wit: that if appellant began the difficulty with Steger,
but only for the purpose of having a fight with him and to inflict
some injury on him less than killing or such serious bodily injury
as might end in death, then his perfect right of self-defense would
be gone, but he would be guilty of an aggravated assault. But
appellant's theory of it was, supported by testimony, that Steger
brought on the difficulty and threw a rock at him, then pulled his
pistol on him and threatened to kill him, and that under those
circumstances the difficulty began. If from the facts the jury
should find, and the law ought to be applied to these facts, that
Steger did begin the difficulty and started to pull his pistol with
threats to kill, and picked up a rock and threw it and knocked
appellant's hat off and appellant rushed upon him, and under those
circumstances engaged in the trouble, this would present the issue
of aggravated assault from appellant's view of the case. We are of
opinion that this charge should have been given. From appellant's
standpoint Steger was the aggressing party from the beginning,
evidencing his intention by his acts and statements to kill. Draw-
ing his pistol, abandoning the idea of shooting, then by returning
his pistol Steger seized a rock and threw at appellant, was clearly
an assault, and under those circumstances if appellant cut Steger,
not with the specific intent to kill, it certainly could be no higher

offense than aggravated assault. This issue of the case ought to have been presented to the jury, and because it was not this judgment will be reversed and the cause remanded for another trial.

*Reversed and remanded.*